UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARIA LAKE, Executor for the
Estate of Ronald Lake, and
Surviving Spouse of Decedent
Ronald Lake,

        Plaintiff,

   v.

AETNA LIFE INSURANCE COMPANY,
JOHN DOE, and JOHN DOE
INSURANCE COMPANY,

        Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 13-5889
(JEI/KMW)

**OPINION**

**APPEARANCES:**

THE LAW OFFICES OF RICHARD SPARACO
By: Jennifer L. Gottschalk, Esq.
1920 Fairfax Avenue
Cherry Hill, New Jersey, 08003
    Counsel for Plaintiff Maria Lake

ELLIOTT GREENLEAF & SIEDZIKOWSKI, P.C.
By: Eric J. Bronstein, Esq.
Union Meeting Corporate Center
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422
    Counsel for Defendant Aetna Life Insurance Company

**IRENAS**, Senior District Judge:

Plaintiff Maria Lake brings this action to recover

accidental death benefits under a policy underwritten by

Defendant Aetna Life Insurance Company ("Defendant" or "Aetna").

1

Currently pending before the Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for summary judgment.  For the reasons explained herein, Plaintiff's motion is **DENIED** and Defendant's motion is **GRANTED**.

## I.   FACTS

The Court recites those facts relevant to deciding the pending motions for judgment on the pleadings and summary judgment and resolves any disputed facts or inferences in regards to each motion in favor of the nonmoving parties.

On September 28, 2011, Ronald Lake ("Decedent") was killed as a result of a single-car crash when his vehicle veered off a road and struck a tree.  (Plaintiff's Counter Statement of Material Facts ("P.C.S.M.F.") ¶ 1; Medical Examiner's Report, Ex. A to Defendant's Motion for Summary Judgment (D.M.S.J.) at 158-60)  The accident occurred around 1:00 a.m. and Decedent was pronounced dead approximately three hours later at 4:08 a.m. at Cooper University Hospital in Camden, New Jersey.  (Med. Examiner's Rpt., Ex. A at 159)  He was forty-six years old. (Id.)

A New Jersey Police Crash Investigation Report ("Police Report") described the relevant roadway as straight, level, and clearly marked with painted lines.  (Police Report, Ex. A at 132-33)  At the time of the incident, it was raining slightly,

the roadway was wet, and it was dark in the area.  (Id. at 133)

There was no traffic on the road when Decedent crashed.  (Id.)

The police investigation of the incident revealed the

following sequence of events:

> Vehicle #1 was traveling southbound on North Main Street
> when Vehicle #1 crossed over the northbound lane and ran
> off the left side of the roadway.  Vehicle #1 continued
> in motion with the driver side tires off the roadway in
> a grassy graded ditch and then struck a tree with the
> front driver's side.

(Id.)  Decedent sustained massive internal injuries as a

result of the crash and died as a result of those injuries.

A Toxicology Report issued by the Burlington County Medical

Examiner's office found that Decedent's blood alcohol

concentration ("BAC") was 0.133% w/v.  (Toxicology Report,

Ex. A at 162)  The legal limit under New Jersey law is

0.08% w/v.  *See* NJ Stat. Ann. 39:4-50.  Plaintiff states

that the Toxicology Report was based on blood drawn at

approximately 2:30 a.m.  (P.C.S.M.F. ¶ 28)  The Toxicology

Report indicates that the blood was drawn postmortem.  (Ex.

A, at 162)

At the time of his death, Decedent was a participant

in the IBEW Local 269 Welfare Fund benefit plan (the

"Plan"), which is funded by a group life insurance policy

(the "Policy") issued by Defendant.  Defendant is a

"fiduciary" under the Policy with the "discretionary

3

authority" to "determine whether and to what extent members
and beneficiaries are entitled to benefits." (Aetna Group
Life and Accident and Health Insurance Policy, Ex. A at
123)  The Policy is governed by the Employment Retirement
Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et
seq.* (Id. at 83)

The Policy provides a Life Insurance sum of $20,000,
and Accidental Death and Dismemberment ("AD&D") benefits,
which include a principal benefit amount of $20,000 and an
Education Benefit Maximum for dependent children in the
amount of 5% of the principal sum not to exceed $5,000 per
year per child for up to four years.  (Id. at 79)  To
secure payment of AD&D benefits, an insured must meet
certain requirements.  Specifically, the benefits are
payable if "you suffer a bodily injury caused by an
accident; and if, within 365 days after the accident and as
a direct result of the injury, you lose . . . your life."
(Id. at 60-61)

The Policy puts forth certain restrictions on the
payment of AD&D benefits as well.  Benefits are not payable
for a loss "caused or contributed to by . . . [a]n
intentionally self-inflicted injury . . . . [or] [a]
covered person's being intoxicated or being under the

influence of narcotics unless administered or consumed on the advice of a physician." (Id. at 65)

On November 28, 2011, following Defendant's receipt of a completed Proof of Death claim form, Beneficiary designation, certified Death Certificate, and Death Notice from the internet, Defendant accepted Plaintiff's claim for life insurance benefits of $20,000 and sent her a check in that amount, but referred Plaintiff's claim for AD&D benefits to a claim analyst. (D.S.U.M.F. ¶¶ 9-12) Defendant denied Plaintiff's claim for AD&D benefits on April 20, 2012 after completing its review of the Police Report and Toxicology Report.[1] (Id. at ¶ 30)

On that same day, Defendant sent Plaintiff a letter stating that Defendant was denying AD&D benefits because the Plan's language precluded coverage where an accident was caused or contributed to by Decedent's intoxication. (Id. at ¶ 32) The letter explained that Defendants made this decision based on its review of the police and toxicology reports, among other documents. (Letter Denying AD&D Coverage, Ex. A at 170-73) Defendant also advised Plaintiff that she had the right to request a review of

---

[1] According to Defendant's statement of facts, the delay in coming to a decision on Plaintiff's claim was due to Defendant's not receiving the Police Report until January 10, 2012, when Decedent's employer provided a copy of the report, and Plaintiff's not signing the necessary release for the Toxicology Report until March 20, 2012. (D.S.U.M.F. ¶¶ 22-25)

5

Defendant's decision within sixty days of the receipt of the letter, and to file a civil action under ERISA if the denial was upheld on appeal.  (Id.; D.S.U.M.F. ¶¶ 34-35)

Plaintiff states that she recalls having mailed a letter to Defendant "in or around April 20, 2012" requesting that Defendant reconsider its decision to deny AD&D benefits.  (P.C.S.F. ¶ 36)  Defendant claims it did not receive any correspondence from Plaintiff until December 28, 2012, when Plaintiff's counsel contacted Defendant and requested a copy of the Plan.  (D.S.U.M.F. ¶ 36)  Plaintiff did not retain a copy of her alleged letter. (Aff. of Maria Lake ¶ 6)

On July 31, 2013, Plaintiff commenced this action against Defendant in Burlington County Superior Court asserting state law claims for entitlement to AD&D benefits under the Plan.  (State Court Compl., D.M.S.J. at Ex. B) Defendant removed to this Court without Plaintiff's objection on the grounds that ERISA, which governs the Plan, preempted the relevant state law.  (D.S.U.M.F. ¶ 11)

Plaintiff presently moves for judgment on the pleadings, and Defendant presently moves for summary judgment.  The Court addresses each party's motion in turn.[2]

---

[2] Although Plaintiff waited almost five months to file opposition papers to Defendant's motion for summary judgment and her reply to Defendant's papers

## II.  Plaintiff's Motion for Judgment on the Pleadings

### A.

Judgment on the pleadings under Rule 12(c) will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 54 (3d Cir. 1994) (internal citations and punctuation omitted).  As a result, a plaintiff's Rule 12(c) motion will not be granted if defendant's answer "raises issues of fact that, if proved, would defeat recovery."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure ("Wright & Miller") § 1368 (3d ed. 2004).  In reviewing a Rule 12(c) motion, the Court "must view the facts in the pleadings and the inferences therefrom in the light most favorable to the nonmoving party." *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988) (internal quotations and citation omitted).

As a threshold matter, this Court must decide how to evaluate Plaintiff's Rule 12(c) motion.  District courts have the discretion to treat a motion for judgment on the pleadings

_____

opposing her motion for judgment on the pleadings, this Court considers both submissions, as well as Defendant's subsequent reply to Plaintiff's opposition papers.

as a motion for summary judgment by accepting evidence submitted
by the parties outside the pleadings. Fed. R. Civ. P. 12(d);
*see* Wright & Miller, at § 1371. A district court need not
convert a Rule 12(c) motion if the court excludes all matters
outside the pleadings when deciding the motion. *Id.; see*
*McBurney v. Cuccinelli*, 616 F.3d 393, 409-10 (4th Cir. 2010)
("'[N]ot considering' such matters is the functional equivalent
of 'excluding' them.") (citation omitted).

 In her moving papers, Plaintiff refers to her motion
interchangeably as one for summary judgment and/or judgment on
the pleadings, but cites Rule 12(c) as the basis for her motion.
In support of the motion, she presents only the pleadings and a
letter brief containing a short statement of facts in which she
mentions some facts not contained in the pleadings. Plaintiff
does not attach any exhibits in support of these additional
facts. In its opposition papers, Defendant cites to exhibits it
filed along with its accompanying motion for summary judgment.

 Since Plaintiff filed her motion pursuant Rule 12(c) and
presents no documentary evidence outside the pleadings, this
Court will not convert Plaintiff's motion into one for summary
judgment. In evaluating the motion, this Court will not
consider matters outside the pleadings contained in the parties'
moving papers.

**B.**

Plaintiff's present Rule 12(c) motion must be denied because Defendant's Answer clearly raises issues of material fact and asserts affirmative defenses that preclude judgment on the pleadings.

In her Amended Complaint, Plaintiff alleges that Defendant did not conduct a "thorough investigation that the Decedent's accidental death resulted from being 'intoxicated.'" (Amend. Compl. ¶ 17) She further suggests that her husband was not intoxicated at the time of his accident. (Id.) Defendant denies these averments and asserts an affirmative defense that its decision to deny benefits was not arbitrary or capricious. (Answer ¶ 17) Plaintiff would not be able to recover under this Court's review of her claim for denial of benefits if the evidence supports Defendant's position that the Decedent was intoxicated and that his intoxication caused or contributed to his death.

Plaintiff also claims in her Amended Complaint that she had sent a letter to Defendant requesting reconsideration of the initial denial of her claim for benefits. (Amend. Compl. ¶ 10) Defendant denied receiving that letter and asserted among its defenses that Plaintiff failed to exhaust her administrative remedies. (Answer ¶¶ 10-11) Plaintiff would not be able to recover if she did not send such a letter, as, excepting limited

9

circumstances, courts do not entertain ERISA claims unless plaintiffs have exhausted remedies available under the relevant plans. *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002).

Since Defendant's Answer raises issues of material fact as to the level of decedent's intoxication at the time of his accident, and whether Plaintiff exhausted her administrative remedies, judgment on the pleadings would be inappropriate.

This Court now turns to Defendant's motion for summary judgment.

### III. Defendant's Motion for Summary Judgment

#### A.

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that

10

no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252.

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Anderson*, 477 U.S. at 249.

**B.**

Defendants move for summary judgment on two grounds: (1) Plaintiff failed to exhaust her administrative remedies because she did not appeal Defendant's denial of benefits, and (2) even had Plaintiff exhausted her administrative remedies, she has not presented facts sufficient to show that Defendant's decision to deny Plaintiff's claim for benefits was arbitrary and capricious.

11

This Court will first address Plaintiff's argument as to the merits of Defendant's decision to deny benefits.

### 1. Standard of Review under ERISA

Plaintiff filed suit under § 502(a)(1)(B) of ERISA, which allows the beneficiary of a covered policy to bring a civil action to recover benefits due under the terms of the relevant plan. 29 U.S.C. § 1132(a)(1)(B)  Courts review the denial of benefits under ERISA "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  When the plan grants a fiduciary discretionary authority to determine eligibility for benefits, courts will not disturb that determination absent an abuse of discretion. *Id.*  In other words, such a decision is subject to review under the "arbitrary and capricious" standard. *See Heasley v. Belden & Blake Corp.*, 2 F.3d 1249 (3d Cir. 1993) ("[I]f a plan contains a clear statement of discretion, it warrants arbitrary and capricious review under *Firestone*.")

"An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012) (internal quotations omitted). Courts have defined "substantial evidence" as "such relevant

12

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotations omitted) (citing *Soubik v. Dir., Office of Workers' Comp. Programs*, 366 F.3d 226, 233 (3d Cir. 2004)).  "[U]nder most circumstances, 'the record for arbitrary-and-capricious review of ERISA benefits denial is the record made before the plan administrator, and cannot be supplemented during litigation.'" *Howley v. Mellon Financial Corp.*, 625 F.3d 788, 793 (3d Cir. 2010) (quoting *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n.5 (3d Cir. 2004).

When the administrator has both discretionary authority and makes payments under the plan, there is a conflict of interest that courts must "weigh as a factor" in reviewing the administrator's decision for abuse of discretion. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Howley*, 625 F.3d at 792-93.  Courts may consider evidence outside the administrative record to determine the scope of any potential conflict of interest. *Id.* at 793-94.

In the present case, as clearly stated in the Plan documents, Defendant is a fiduciary with discretionary authority to determine Plaintiff's eligibility for benefits under the Plan.  (Ex. A at 123)  As a result, the arbitrary and capricious standard applies to Defendant's decision to deny benefits.  At the same time, Defendant also pays out benefits under the Plan

13

and thus has a financial interest in decisions to grant or deny coverage.  This Court thus considers that inherent conflict of interest when reviewing Defendant's decision for an abuse of discretion.

## 2. Analysis

To obtain summary judgment in its favor on Plaintiff's ERISA claim, Defendant must show that, based on the record before the Court, a reasonable factfinder could not determine that Defendant's decision to deny AD&D benefits was arbitrary and capricious.

Defendant points to the Plan's language, which expressly precludes AD&D coverage for deaths resulting from bodily injuries caused or contributed to by a person's being intoxicated.  According to Defendant, the administrative record, which includes the Police Report, Medical Examiner's Report, and Toxicology Report, provided evidence sufficient for the determination that Decedent's intoxication caused or contributed to his car accident on September 30, 2011.

The evidence supporting Defendant's decision is, indeed, substantial.  Decedent's BAC, taken some time after the accident, was 0.133% (w/v), which far exceeds New Jersey's legal intoxication limit of 0.08% (w/v).  (Toxicology Report, Ex. A at 162)  The Police Report established that Decedent was the only vehicle involved in the accident, which occurred on a straight

14

and level roadway with properly painted lines and free of any hazards. (Police Report, Ex. A at 132-33) According to the report, Decedent was travelling southbound on the roadway when he crossed the center line into the northbound lane, ran off the side of the northbound lane into a grassy graded ditch, and then struck a tree. (Id. at 133) Defendant came to its determination that Plaintiff's claim for AD&D benefits was not payable only after receiving and reviewing these reports. (D.S.U.M.F. ¶¶ 29-32)

Plaintiff presents two factual issues in dispute in arguing that Defendant made only a "cursory review" of Plaintiff's claim for AD&D benefits. (P.'s Memo. In Opposition at 4) First, Plaintiff suggests that her husband was not intoxicated at the time of the incident. She states that the BAC reading did not provide a factual basis for concluding that Decedent was intoxicated at the time of the car crash because his blood was not drawn until at least ninety minutes after the incident.[3] (Id.) According to Plaintiff, a proper review would have analyzed Decedent's BAC at the time of the accident.[4] (Amen.

---

[3] Plaintiff has not provided evidence, and this Court cannot find any evidence in the record, specifying the time Decedent's blood was actually drawn. The Toxicology Report indicates that the BAC reading was based on blood drawn postmortem, and Decedent died nearly three hours after the accident. (Def.'s Reply Brief in Support of its Motion for Summary Judgment at 12)
[4] Plaintiff states that such an analysis would have considered the time that passed between the accident and the blood test, and the effect of any "medicinal substances rendered to decedent" when he was treated by first responders. (Amen. Compl. ¶ 17)

15

Compl. ¶ 17)   Second, Plaintiff claims she sent a letter to
Defendant in April 2012 raising the issue of the delayed blood
test and asking Defendant to re-evaluate its determination,
which Defendant allegedly refused to do.  (Id. at 4-5)

Making all inferences in Plaintiff's favor, this Court
holds that a reasonable jury could not find these facts
sufficient to conclude that Defendant's decision to deny
Plaintiff's claim for benefits was arbitrary and capricious.
Plaintiff submitted no evidence during either the administrative
process or to this court in support of her argument that the BAC
reading from blood drawn ninety minutes, or even three hours,
following Decedent's car crash did not provide a factual basis
for determining his level of intoxication at the time of the
incident.[5]  Plaintiff could have presented evidence regarding
when Decedent consumed alcohol, how much he consumed, and
whether he had eaten a meal before driving – information that
could have called Defendant's reliance on the Toxicology Report
into question.[6]  Significantly, these are pieces of evidence to
which Plaintiff, not the Defendant, presumably had access.

---

[5] Plaintiff claims in her opposition papers to have proposed to Defendant's
counsel to engage an expert to testify as to decedent's lower BAC at the time
of the crash, but Plaintiff has neither offered as evidence any report of
such an expert and has not applied to this Court to delay judgment on
Defendant's motion while Plaintiff pursues further discovery.
[6] Studies show that alcohol continues to absorb into the body, and thus an
individual's BAC rises, from a half-hour to as long as three hours after
consumption.  See Lawrence Taylor and Steven Oberman, Drunk Driving Defense
(7th ed. 2014) § 6.03.  Once absorption is complete, BAC begins to decline at

16

Yet, Plaintiff presented not even a scintilla of evidence indicating that the BAC reading did not reflect Decedent's BAC at the time of the accident, or any other reason to believe that Decedent's accident was not caused or contributed to by his intoxication. A reasonable factfinder would determine that Aetna was therefore entitled to rely on the official Toxicology Report, which was not disputed when Aetna reviewed Plaintiff's claim for benefits. *See Guthrie v. Prudential Ins. Co. of Am.*, No. 12-7358 (JLL), 2014 WL 3339549 (D.N.J. July 8, 2014) (finding that an insurer who denied AD&D benefits reasonably relied on a toxicology report where there was "no evidence suggesting that such results are inaccurate or otherwise compromised," even though plaintiff challenged the chain of custody of blood samples used for the report). Plaintiff's suggestion that her husband was not intoxicated is mere speculation and not sufficient for her claim to withstand summary judgment.

Defendant evaluated the AD&D claim for a man who crossed over the center line on an empty, properly painted road, ran off the road into a ditch, and crashed into a tree. That man's BAC, measured by blood drawn postmortem, was significantly above the

---

a rate that varies widely from person to person. *Id*. Here, there is no telling how long before the accident Decedent consumed alcohol, and Decedent could theoretically have had a lower *or higher* BAC at the time of the crash than during the postmortem blood test.

17

legal limit.  Perhaps the rain and darkness that night played a role in the incident.  But, based on the above facts, it would be unreasonable to find that Defendant's determination that Decedent's intoxication at least "contributed to" the accident was arbitrary and capricious.

This Court acknowledges the conflict of interest inherent in the fact that Defendant has a financial interest in the Plan under which Plaintiff applied for benefits.  However, there is no basis for concluding that Defendant's role in interpreting and making payments pursuant to the Plan infected its decision to deny benefits.  Defendant did not render its decision until it obtained and reviewed all relevant reports concerning Decedent's crash.  These reports provided substantial evidence supporting Defendant's decision to deny AD&D benefits.  Even considering the inherent conflict of interest, a reasonable factfinder could not determine that Defendant's denial of Plaintiff's benefits to be erroneous as a matter of law.

Since this Court holds that a reasonable factfinder could not find Defendant abused its discretion in denying benefits under the Plan, it will not need to reach the question of whether Plaintiff exhausted her administrative remedies.

**IV.**

For the reasons set forth above, the Court will **DENY** Plaintiff's Motion for Judgment on the Pleadings, and **GRANT** Defendant's Motion for Summary Judgment.  An appropriate Order accompanies this Opinion.

Date: October 21st, 2014

<u>    s/ Joseph E. Irenas    </u>
**JOSEPH E. IRENAS, S.U.S.D.J.**